BENJAMIN N. WRIGHT & wife *vs.* SOLOMON GILSON, Executor, & others.

A testator, having seven children. viz., four sons and three married daughters, gave each of said children, naming each of them, but not naming the husbands of the daughters, a small pecuniary legacy ; and then, after providing for the support of his wife, bequeathed the residue, after her decease, in these terms : " To each of my children, to be divided among them as follows : To H.," (husband of one of his daughters,) " and T. his wife, one share, on account of the support and kindness I have received from them ; to W." (husband of another daughter,) " and L. his wife, one share, on account of their extra kindness to me and my said wife ; and to each of my other children, one share." *Held.* that it was the intention of the testator to give to each of his children one seventh part of the residue of his estate.

THE plaintiffs set forth, in a bill in equity, that Solomon Gilson, by his last will, executed October 8th 1835, made the following disposition of his property :

" First, I direct that all my just debts and funeral charges be paid as soon as conveniently may be. 2. Then I give and devise to each of my children, who may be alive when this will shall take effect, viz., Timothy Gilson, Jemima Farmer, Tamar Hamblet, Solomon Gilson," (one of the defendants,) " Michael Gilson, Lovey Wright," (one of the plaintiffs,) " and Ebenezer Gilson, the sum of fifty cents. 3. Next, I give, devise and bequeath to my wife, Tamar Gilson, all the rest, residue and remainder of my estate, real and personal, to her and her heirs forever ; and I desire her to use the same frugally and pru dently, so that the surplus, which may not be required for her comfortable support and maintenance, may be left for our children. 4. Lastly, I give to each of my children, and to their children after them, in case I should survive any of them, all the rest and residue of my estate, which may not be necessary for the comfortable support during life, and for her christian burial after her decease, of my said wife, to be divided among them, as follows : To Thomas Hamblet and Tamar his wife, one share, on account of the support and kindness I have received from them ; to Benjamin N. Wright, and Lovey his wife, one share, on account of their extra kindness to me and my said wife ; and to each of my other children one share, to them and their heirs ; and in case of the death of either of said

children, then the share and portion given to them shall be and go to their children, if they shall leave any to take it; and in case I should survive my said wife, then I order and give the estate hereby given to her to go to my said children and their children, in the manner herein directed. 5. And I do hereby constitute my son, Solomon Gilson, executor of this will."

The bill further set forth, that said testator died on the 17th of March 1838, leaving personal property, but no real estate; that his wife, and said Thomas Hamblet and Tamar his wife, the said Benjamin N. Wright and Lovey his wife, and all the children of the testator, survived him; that said will was proved and allowed by the judge of probate, on the first Tuesday of May 1838; that the defendant, Solomon Gilson, took upon himself the trust of executor of said will, and took possession of said personal property, and paid all the just debts of the testator, his funeral charges, the pecuniary legacies given by said will, and the expenses of administration; that, after the aforesaid payments, there remained, of the testator's property more than $300, some of which the said executor expended pursuant to said will, in the support and burial of the testator's widow, Tamar Gilson, who died on the 1st of November 1840; that upon a settlement of said executor's account of his administration of said estate, on the 4th of May 1841, there was found in his hands $180·92, remaining to be distributed according to said will; and that said Timothy Gilson, Jemima Farmer, Michael Gilson, and Ebenezer Gilson, each claimed and received of said Solomon Gilson, the executor, one seventh part of said sum.

The bill further alleged that said executor, by virtue of his said office under said will, and by operation of law, became a trustee, and held the sum last aforesaid in trust for said legatees; that the plaintiffs were entitled, by force and virtue of said will, to receive from said executor one full third part of said sum; that said Thomas Hamblet and Tamar his wife, were entitled to receive one other full third part thereof; and that said Timothy, Jemima, Michael, Ebenezer and Solomon, were entitled to receive and have the other third part thereof·

that the plaintiffs, and said Thomas Hamblet and wife, had requested said executor to pay to them their several shares and portions, as aforesaid, which he refused, and still refuses to do — he and the said Timothy, Jemima, Michael and Ebenezer, pretending that the plaintiffs, and said Thomas and wife, are each entitled to receive only one seventh part of said sum. Wherefore the plaintiffs prayed relief in equity.

The defendants admitted the truth of the facts alleged in the bill; and the plaintiffs admitted that said executor, before the filing of the bill, tendered to them one seventh part of the sum aforesaid, as their share thereof, and that they refused to receive it; and the case was submitted to the court, on these admissions.

*B. Russell,* for the plaintiffs. In ascertaining the intent of the testator, it is proper to consider, *first,* the terms of the particular bequest, according to their natural import, and conformably to legal rules; *secondly,* all the other parts of the same will; and *thirdly,* the situation and circumstances of the testator, the legatees, and the property bequeathed. *Crocker* v. *Crocker,* and *Lamb* v. *Lamb,* 11 Pick. 257, 376. 2 Roberts on Wills, 27. *Crone* v. *Odell,* 1 Ball & Beat. 460, 466.

Under the will in question, the residuum of the testator's estate was given absolutely to his wife, upon condition of her surviving him and needing the same for her support; and if this condition should not happen, then the estate was to be divided, on her death, among his children, in the proportions expressed in the will. One of the conditions, upon which the absolute estate was to vest in her, has not happened; and therefore the executor holds the property as trustee for the legatees. *Malim* v. *Keighley,* 2 Ves. jr. 333, 529. *Meredith* v *Heneage,* 1 Simons, 551. *Woods* v. *Woods,* 1 Mylne & Craig, 401. *Raikes* v. *Ward,* 1 Hare, 445.

The plaintiffs contend that, according to established rules of construction, it was the testator's intention that the property, remaining at the death of the widow, should be divided into three parts; one third to the plaintiffs, one third to Hamblet and wife, and the other third to the five other legatees. The testator assigned a reason for giving more to the two former

than to the five latter, viz., "on account of the support and kindness" he had received from Hamblet and wife, and in the case of the plaintiffs, "on account of their extra kindness" to him and his wife. No doubt could be raised on this point, were it not for the words, "and to each of my other children one share." But these words are to be construed by the terms used in the bequests to the plaintiffs, and to Hamblet and wife. If the general intention of the testator can be collected, upon the whole will, particular terms used, which are inconsistent with that intention, may be rejected, as introduced by the testator's mistake or ignorance of the force of the words used. *Sherratt* v. *Bentley,* 2 Mylne & Keen, 149. *Trickey* v. *Trickey,* 3 Mylne & Keen, 560. *Ellicombe* v. *Gompertz,* 3 Mylne & Craig, 127. The words "each of" may therefore be rejected, as inconsistent with the general intention of the testator.

Again; if the words "each of" are not to be rejected, yet by construing "each" in a collective instead of a distributive sense, or by construing "one share" as equivalent to *the remaining share,* the intention of the testator, for which the plaintiffs contend, will be effectuated. Such a construction is warranted by decisions in analogous cases. See *Englefried* v. *Woelpart,* and *Griffith* v. *Woodward,* 1 Yeates, 45, 319. *Jackson* v. *Strang,* 1 Hall, 21. *Spalding* v. *Spalding,* Cro. Car 185. *Sheppard* v. *Lessingham,* Amb. 122.

The rule, that where two clauses in a will are inconsistent, the last clause shall prevail, never is applied, when the two clauses can be reconciled by the established rules of construction.

*D. S. Richardson,* for the defendants. It is doubtless clearly settled, that in the construction of a will, the court is to be governed by the intention of the testator, as gathered from the language of the whole instrument. But each case must, in general, stand by itself; for though particular cases, previously decided, may guide as to the general rules of construction, yet unless they are in every respect directly in point, and agree in every circumstance, they will have little or no weight with the court. *Baddeley* v. *Leppingwell,* 3 Bur. 1541 *Gulliver* v. *Poyntz.* 3 Wils. 142, 143.

As a general rule, every word in a will is to be construed according to its natural and obvious import. Words may sometimes be controlled and varied, but never unless required by the plain and manifest intent of the testator, gathered from the language of the whole will. 3 Bur. *ubi sup.* *Strong* v. *Cummin,* 2 Kenyon, 490. *Chapman* v. *Brown,* 3 Bur. 1634. *Chambers* v. *Brailsford,* 2 Meriv. 25. *Vauchamp* v. *Bell,* Mad. & Geld. 346. *Thellusson* v. *Woodford,* 4 Ves. 329. *Smith* v. *Bell,* 6 Pet. 83, 84. *Dawes* v. *Swan,* 4 Mass. 215. By the rules of construction laid down in these cases, the residuum of the property now in question is to be divided into seven equal shares ; one share to the plaintiffs, one to Hamblet and wife, and one to each of the testator's other children. The clause dividing the residuum is free from all ambiguity, so far as the words go, understood in their common meaning : " To T. Hamblet, and Tamar his wife, one share, on account of the support and kindness, &c. ; to B. N. Wright, and Lovey his wife, one share, on account of their extra kindness, &c., and to *each* of my other children one share." The word " each " is clear and plain, and no other construction than that for which the defendants contend can be adopted, except by the rejection or total alteration of this word, which cannot be done by the court, unless the general intent is so clear "as to leave the mind quite satisfied " that the word must be rejected or altered in order to effect that intent. It is true that the testator gives to *each* of his children, and to their children after them, all the rest and residue, &c. ; but *that* word " each " he explains by adding, " to be divided among them, as follows." But to *this* word " each " he adds nothing to explain it. He leaves it to its common meaning. If he had intended a division of a share in this case, he would have added words of division ; as he had to the other " each." Besides ; in the bequest of fifty cents to each of his children, in the second clause of the will, the testator uses the word " each " by itself, in its common meaning. Therefore no argument can be drawn from the use of the same term in other parts of the will.

What was the general intent of the testator, as gathered from the language of the whole will ? First, he makes all the

provision in his power for his wife, cautioning her to use his property frugally, that a surplus may be left for the children; and he nowhere indicates that he had not an equal attachment to all his children, and an equal confidence in them. Ordinarily then a testator thus situated would divide his property equally among his children. The plaintiffs insist, however, that the testator intended that they, and Hamblet and wife, should have a larger share than the other children, because he gives them a share " on account of support and kindness received from them." But there is a strong and satisfactory argument against the position, that these words establish a *manifest* intent of the testator to give these legatees more than the others. The testator left seven children, three daughters and four sons. Whenever he speaks of children, it is clear that he means these seven, and not the husbands of the daughters. In the clause giving fifty cents to each, he mentions these seven only. In the third clause, he speaks of a surplus left for the " children ; " and in the fourth clause, he makes a provision, " in case of the death of either of *said children.*" It is necessarily to be presumed that the testator meant his own progeny, by the term " children." But if not, still the argument holds. For in the clause which gives the residuum, the husbands of two of his daughters are named, and the other children are not mentioned by name ; the husband of Jemima Farmer (though he was then alive) is nowhere mentioned in the will ; and the names of Wright and Hamblet are mentioned in no place except where their " kindness " is acknowledged. His including these husbands in the legacies wherein he acknowledges their kindness, would as naturally, and, in connexion with the word " each," more reasonably, lead to the conclusion that he meant this acknowledgment of kindness as a grateful remembrance, rather than as evincive of an intention to give to them a larger legacy than to the five others.

SHAW, C. J. The case has been very well argued ; and we think it very clear, upon the plain and manifest construction of the will, that it was the intention of the testator to divide the residue of his estate, after the decease of his widow, into seven parts, and to give one seventh to each of his children    The

acknowledgment of kindness from two of the husbands of his daughters named is alone a very slight ground on which to found an intention of the testator to make an unequal distribution of his property amongst his children; and no other evidence of such intention appears in any part of the will. But if he had such an intention, he clearly has failed to accomplish it, because he has, in express terms, given one share to each of his seven children; and it would do violence to the language to put any other construction upon it.